IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MYMAIL, LTD.,<br><br>Plaintiff,<br><br>V.<br><br>TCL CORPORATION D/B/A ALCATEL F/K/A ALCATEL ONETOUCH, TCL COMMUNICATION TECHNOLOGY HOLDINGS LTD. D/B/A ALCATEL F/K/A ALCATEL ONETOUCH, and TTE TECHNOLOGY, INC. D/B/A TCL USA,<br><br>Defendants. | Civil Action No. 2:17-cv-00257<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, MyMail, Ltd., by and through their undersigned counsel, submits this Complaint against the above-named Defendants, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendants' infringement of United States Patent No. 8,732,318 (the "'318 patent" or "patent-in-suit").

## THE PARTIES

2. Plaintiff, MyMail, Ltd. ("MyMail"), is a Texas Limited Partnership with an office and place business at 5344 County Road 3901, Athens, TX 75752.

3. Upon information and belief, Defendant, TCL Corporation d/b/a Alcatel f/k/a Alcatel OneTouch ("TCL Corp"), is a corporation existing under the laws of China, with a principal place of business at Number 17 TCL Technology Building, 22nd Floor, Three-way Wind, Zhong Kai Hi-Tech Zone, Huizhou, 516006 P.R. China.

4. Upon information and belief, Defendant, TCL Communication Holdings Ltd. d/b/a Alcatel

f/k/a Alcatel OneTouch ("TCL Comm"), is a corporation existing under the laws of China, with a principal place of business at TCL Tower, 15th Floor, Gaoxin Nan Yi Road, Nanshan District, Shenzhen, Guangdong, 518057 P.R. China.

5. Upon information and belief, Defendant, TTE Technology, Inc. d/b/a TCL USA ("TTE") is a corporation existing under the laws of the State of Delaware, with a principal place of business at 17534 Von Karman Avenue, Irvine, California 92614.

6. Defendants TCL Corp, TCL Comm, and TTE are collectively referred to herein as "TCL" or "Defendants."

## JURISDICTION AND VENUE

7. This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this case for patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. The Court has personal jurisdiction over Defendants, including because Defendants have minimum contacts within the State of Texas; Defendants have purposefully availed themselves of the privileges of conducting business in the State of Texas; Defendants regularly conduct business within the State of Texas; and Plaintiff's cause of action arises directly from Defendants' business contacts and other activities in the State of Texas, including at least by virtue of Defendants' infringing methods and apparatuses, which are at least sold and/or used in the State of Texas. Further, this Court has general jurisdiction over Defendants, including due to their continuous and systematic contacts with the State of Texas. Further, on information and belief, Defendants are subject to the Court's jurisdiction, including because Defendants have committed patent infringement in the State of Texas.

9. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1391 and 1400(b),

including because Defendants have purposefully availed themselves of the privileges of conducting business in this District; Defendants regularly conduct business within this District; and Plaintiff's cause of action arises directly from Defendants' business contacts and other activities in this District, including at least by virtue of Defendants' infringing methods and apparatuses, which are at least sold and/or used in this District. Further, Defendants have continuous and systematic contacts with this District.

10. More specifically, on information and belief, Defendants are subject to the Court's jurisdiction, including because Defendants have committed patent infringement in this District. Pursuant to 35 U.S.C. § 271, Defendants infringe the patent-in-suit by, without authority, their practicing the accused methods described herein in this District.  Further, Defendants solicit customers/users in this District.  On information and belief, Defendants have customers/users who are residents of this District and who purchase, acquire, and/or use Defendants' infringing products in this District.

## INTRODUCTION

A.     *MyMail, Ltd.*

11. MyMail was co-founded in 2003.  Its executive team includes Thomas Selgas, a visionary and named inventor on the patent-in-suit.  MyMail is an intellectual property development and licensing company which provides secure, internet related technologies which have brought essential communications capabilities to cell phones, web browsers, and the backbone of the internet.

12. The technologies developed and owned by MyMail enable substantial cost savings to companies, including Internet Service Providers, Content Providers (*i.e.*, 'publishers'), and Affinity Marketers (*i.e.*, 'Advertisers'), by allowing them to transparently manage network

connections, network credentials of their end-user clients, and the use of dynamic toolbar operations.

13. MyMail is the current assignee of the patent-in-suit and has standing to bring this lawsuit, including the right to recover damages for past, present, and future infringement of the patent.

B.      <u>Patent-in-Suit</u>

14. Mr. Selgas is the first listed co-inventor on the patent-in-suit, which is U.S. Patent No. 8,732,318 (the "'318 Patent"). Mr. Selgas and the other inventors filed a provisional patent application with the United States Patent and Trademark Office ("USPTO") on June 19, 1997. The '318 Patent was filed as application No. 10/417,821 on April 16, 2003. The '318 Patent is a division of application No. 09/100,619, filed on June 19, 1998, now U.S. Patent No. 6,571,290.

15. The Abstract of the '318 Patent states the following:

> The present invention comprises a method of and apparatus for simplifying the process of access to a network for a roaming computer user, divides the responsibility of servicing a given user wanting to access the network between multiple parties and minimizes the possibility of improper dissemination of email header data as well as improper use of network resources (including server systems) by non-clients

16. As of the priority date of the '318 Patent, Internet users were becoming highly mobile and the need to access the Internet from various locations was increasing, some of which locations did not have a local phone number for communicating with the normally used ISP. Such a user either had to pay the cost of a long distance call or access a different ISP after modifying the appropriate data the operating system's networking, dial-up-networking, or communications properties used to accomplish such access. Such modification always invites a chance for erroneous data entry in the process and the accompanying time required to rectify the situation. '318/2:53-62.

17. In view of these issues and others, there existed a need to quickly and easily access the Internet from various locations, being able to access ISPs providing different types of services,

using various adaptors (*i.e.*, modem or LAN card) and being able to choose whether preference should be given to items such as cost and quality of service, without the user having to be concerned about correctly modifying associated data and parameters such as phone numbers, IDs, passwords etc. used by the Internet software. '318/3:27-34. It should be noted that the invention applies to any network or interconnected set of networks including the Internet. '318/4:54-59.

18. As noted in the '318 patent, the recited technology solves all or some of at least the following ten problems:

   a. Eliminates the need for a computer user to configure and reconfigure computer networking software for network access through a multiplicity of ISPs and Network Access 65 Providers (NAP) (companies which own the telephone networks and modem banks such as AT&T, GTE, UUNet, PSI, etc.).
   b. Allows a Network Re-seller such as an Internet Service Provider to offer network access via a multiplicity of Network Access Providers based on cost, location, availability, reliability, etc.
   c. Allows a Network Re-seller to balance network loads through a multiplicity of Network Access Providers and across a multiplicity of network computer servers.
   d. Eliminates the need for a computer user to know or configure network access telephone numbers or network access protocol identification numbers.
   e. Eliminates the need for a computer user or mobile computer user to reconfigure remote network access software to connect to a network from a remote location.
   f. Allows multiple users to use a single computer each with their own unique networking attributes and unique network identity.
   g. Allows separate and distinct identifications (ID) and passwords for different services and network functions such as PAP IDs and PAP password, Email ID and password, etc.
   h. Provides a user with true network anonymity by assigning independent non-user specific identifications and passwords for such things as PAP authentication, FTP and Email logins, News Server logins, and network server logins.
   i. Provides Email anonymity by transmitting and receiving all email through a third party (broker) wherein, if appropriate, aliases may be used for all un-encrypted data and these aliases may be changed periodically by the system in a manner transparent to the user.
   j. Eliminates third party email relay (SPAMMING) by transparently authenticating each user-system prior to giving access to a sendmail server.

'318/4:59-5:31.

19. The technology recited in the claims of the '318 Patent provides an inventive concept and does not claim an abstract idea. The inventive concept greatly enhances and facilitates technological methods which comprise obtaining a set of network access information comprising modifying a stored set of network access information using new information downloaded, via the network, to a network access device from an access provider connected to said network; and the network access device re-accessing the network via a given network service provider (NSP) using the modified set of network access information.

20. The technology recited in the claims of the '318 patent improves the functioning of computers, it improves computer capabilities, and it improves over existing technological processes, including with respect to network access and security, wherein new access information is downloaded via the network and network access is re-established using the new access information.

21. One inventive component of the '318 patent is improving network access and security in ways that are necessarily rooted in computer, specifically network, technology to overcome problems specifically arising in the realm of computer networks. The claims recite an invention that was not merely a routine or conventional use of conventional devices and technologies. The claimed invention was not practiced by others prior to the '318 invention, nor was it a well-known, fundamental economic or conventional business practice, nor was it a practice to which general-purpose computer components were added after the fact.

22. Claim 5 of the '318 Patent covers the following:

> A method for obtaining a set of network access information comprising the steps of:
> modifying a stored set of network access information using new information

>   downloaded, via the network, to a network access device from an access provider connected to said network; and
> 
>   the network access device re-accessing the network via a given network service provider (NSP) using the modified set of network access information.

23. Neither claim 5 nor any other claims of the '318 Patent is directed to an abstract idea. Neither claim 5 nor any other claims of the '318 Patent preempt any abstract idea or otherwise preempt anything that would render them unpatentable.  For example, one is free to practice the prior art of record and the prior art referenced in the specification.  The '318 claims do not improperly inhibit further discovery by tying up any building blocks of human ingenuity or technological work.

24. Claim 5 of the '318 Patent covers, among other things, specific applications of specific methods for obtaining a new or modified set of network access information via the network and re-accessing the network using the modified set of network access information, including in order to achieve the aims of the invention as stated above, and to overcome the shortcomings in the prior art, including prior art network access and security methods, as noted above.  This claim comprises, among other things, specific applications or improvements to technologies in the marketplace, including improvements to the existing network access and security methods.  Properly understood, the claimed technology constitutes the application of certain ideas, and it necessitates the use of discrete computer hardware and software components configured and programmed in a particular way that enable performance of the specified functions.

25. Further, including when claim 5 is viewed as a whole at the time of the invention, there are sufficient unconventional, non-routine, novel, meaningful, and inventive claim limitations to claim 5 that are sufficient to ensure that the claim in practice amounts to significantly more than merely a patent on any abstract idea or patent ineligible concept.  Those unconventional, non-routine, novel, meaningful, and inventive claim limitations comprise the following: modifying a stored set

of network access information using new information downloaded, via the network, to a network access device from an access provider connected to said network, wherein the network access device re-accesses the network via a given network service provider (NSP) using the modified set of network access information.

26. Further, claim 5 can only be implemented by a special purpose computer, which is integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not, including that such calculations or computations could not be performed solely in the human mind. A special computer is integral to claim 5, including because special programming is necessary to perform the claimed steps. Further, claim 5 is necessarily rooted in computer technology because computer technology is the only way to perform the claimed steps, including that, as noted above, claim 5 relates to specific use of network technology.

27. The '318 Patent claims cannot be practiced by a human alone and there exists no human analogue to the methods claimed in the '318 Patent. The claims are specifically directed to, *inter alia*, network access and security, wherein new access information is downloaded via the network and network access is re-established using the new access information. These things exist only in the context of computers, and specifically computer networks.

28. The invention of claim 5 uses computer technology to overcome the shortcomings of prior art methods, as noted above, including state of the art network access and security methods, which lacked, among other things, the ability to perform the foregoing steps. As such, claim 5 overcomes a technical problem and effects an improvement to a specific technology or technical field, namely computer networks and networking. One such inventive component of the '318 Patent is improving network access and security in ways that are necessarily rooted in computer technology to overcome problems specifically arising in the realm of computer networks, including the

Internet.  The claims recite an invention that was not merely a routine or conventional use of the Internet.

29. Claim 5 is not directed to a longstanding commercial practice nor does it merely apply generic or general purposes computers to prior art systems or methods.  Including as noted above, prior art methods were incapable of the functionality of the method of claim 5. The technology claimed in the '318 Patent does not preempt all types of network access and security or anything else.  For example, the prior art cited on the face of the '318 Patent remains available for practice by Defendants, and the '318 Patent claims do not preempt practice of those prior art methods.

### COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,732,318

30. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

31. The '318 Patent, entitled "Method of Connecting a User to a Network," was duly and legally issued by the USPTO on May 20, 2014 after full and fair examination.

32. The claims of the '318 Patent cover, *inter alia*, methods, including associated with computers and computer networks, for obtaining a set of network access information comprising modifying a stored set of network access information using new information downloaded, via the network, to a network access device from an access provider connected to said network; and the network access device re-accessing the network via a given network service provider (NSP) using the modified set of network access information.

33. TCL has infringed and is now infringing, including literally, jointly, and/or equivalently, the '318 patent, including at least claim 5, in this judicial district, the State of Texas, and elsewhere in the United States, in violation of 35 U.S.C. § 271 through actions comprising the practicing, making, using, offering for sale, and/or selling, without authority from Plaintiff, methods and devices implementing methods, including associated with computers and computer networks, for

obtaining a set of network access information comprising modifying a stored set of network access information using new information downloaded, via the network, to a network access device from an access provider connected to said network; and the network access device re-accessing the network via a given network service provider (NSP) using the modified set of network access information. For example, the accused TCL devices support Wi-Fi Protected Setup ("WPS") and can connect to WPS-enabled wireless networks. When connected to a WPS-enabled network in which a guest device leaves the network, the accused TCL devices perform a method of obtaining a set of network access information comprising modifying a stored set of network access information (*e.g.*, WLAN credentials) using new information downloaded, via the network, from an access provider connected to said network, followed by re-accessing the network via a network service provider using the modified set of network access information. Additionally, for example, the accused TCL devices support Wi-Fi Protected Access ("WPA/WPA2") functionality and can connect to WPA/WPA2-enabled wireless networks. Without limitation, when connected to a WPA/WPA2-enabled wireless network in which a device is deauthenticated or dissociated, the accused TCL devices perform a method of obtaining a set of network access information comprising a stored set of network access information (*e.g.*, a Group Temporal Key) using new information downloaded, via the network, from an access provider connected to said network, followed by re-accessing the network via a network service provider using the modified network access information.

34. TCL infringes the '318 Patent by and through at least its practicing of the patented method, included via its making, using, offering for sale, and/or selling phones, tablets, televisions, and other mobile devices, comprising WPS functionality and/or WPA/WPA2 functionality, including the products comprising 65US5800, 55UP130, 55UP120, 55US5800, 55US57, 55FS3750,

50UP130, 50UP120, 50FS3800, 49FP110, 48FS3750, 48FD2700, 43UP130, 43UP120, 43FP110, 40FS3800, 40FS3750, 40FD2700, 32S3800, 32S3750, 32D2700, 28S3750, 28D2700, TCL 550, TCL 580, TCL T9, TCL 950, TCL 598, TCL 562, TCL 560, TCL 750, TCL J926T, TCL P550U, TCL P561M, TCL Play 2, TCL Play 2C, 302U, 309T, Pride T500L, P528D, P308L, P308M, P502U, P332U+, H916T, P316T, P316L, i709M, i708U, P332U+, P689L, P360W, P302C, P728M, P520L, S838M, S725T, P331M, P301M, J736L, J716D, J936D, P306C, J930, S830U, J938M, J929L, P301C, J620, J900, J320T, J600T, S700, J630, J630T, J920, J726T, P606T, J900T, S530T, Joy, P561U, P350M, P589L, P560M, M2M, M2U, P588L, P335M, i800, 3S, Ono, P501M, P620M, P618L, M2T, M2L, P516L, P500M, P55U, i718M, P518L, S720T, P631M, P688L, Memeda, S720, J730U, J738M, Idol X+, S860, S960, Agate, Yaris, 5138E, 5050S, 6036Y, 5050Y, P330X, 5050X, 6036X, 7055A, 5050A, 6037B, A995L, 6050A, 6037I, 6050Y, 6036A, A845L, 6037K, 6050F, 7050Y, 6037Y, 6043D, 6042D, 6043A, 4023A, VF-795, 4022D, 4022X, 4031D, M821F, 7054T, 5065X, A462C, 5017B, 9007A, 5015D, 5017A, 5015X, 6045I, 5065A, 5065D, 9007X, 6045B, 6045Y, A450TL, 5015A, 5015E, 5017X, 5016J, 4024X, 6045K, 5042T, M823F, 5016A, 5018D, 4024D, 5017D, 5017E, 7049D, VF-696, 5065W, 5017O, 6044D, 5054S, 4038D, 7053J, 5025G, 6045F, 7053E, 5054D, 5055S, 7053D, 5070D, 5054N, 5054T, 5055W, 9007T, 5054X, 6045O, 5054O, 902X, 5054A, 5017G, 5022D, VF-1397, A621BL, 5017W, 5065T, A621R, AM-H200, 5045A, A570BL, A621BL-V, 4017A, A571VL, A622VL, A622GL, 5056M, 5060O, 5022X, 5056D, 5056A, 4017F, 5056X, 4034G, 5056T, 4017X, 5056A, 4034A, 4034D, 4034X, 4017D, 4034E, 5045X, 5045D, 5010D, 5045J, VFD 300, 5045G, 5010G, 5010S, 4034F, 4034M, 4034N, 6070K, 5010X, 5051X, 5051J, 5051A, 5010E, 5051M, 5027B, 5051T, 5051D, 5010U, 4060A, 6055K, 5095I, 4060O, 5095Y, 4017S, 5098S, VFD 900, 6070Y, 6055B, 6055U, 5095B, 5056N, VFD 700, 9001X, 5065N, 9001I, A466BG, 9001D, POP 4S, 5065E, FL02,

VFD500, 5045T, A573VC, 6055P, 5012F, 5012G, 5045Y, VFD501, 5057M, 4060S, A572BG, 6071W, 5057X, 5023F, VFD 100, 5023E, FL03, 5048A, 5048U, 5048T, 5045I, 4060W, 6070O, TCL 562, 5080U, 5080X, 9022S, TCL 5145A, A466T, 6055Z, 5080A, 4044T, 4044W, 6055A, 5080Q, VFD 301, 7070Q, 5044A, 5056I, T-1000, 4044O, A576BL, 5041D, 5080F, T550D, 5085A, 5085J, 9008A, 5044O, 5085Q, 4044N, A577VL, 5085I, 5044Y, 6055D, 4044V, 5085B, 7070X, 5044D, 5085Y, 7070D, 5085D, 5044I, VFD502, 5046U, 5044R, 5046I, 4055J, 5045F, 4044M, 5046J, 4055A, 9008J, 4055U, A576CC, 5046S, 4055I, 4055Q, 9008D, VFD 610, 5046G, 9008T, 5056G, 9008I, BBB100-2, BBB100-1, 9008X, BBB100-3, Vodafone Smart Tab 4, One Touch P310A, One Touch P310X, One Touch P320X, One Touch P320A, One Touch P321, I216A, 9002X, 9002A, P360X, 9006W, I216X, VF-1497, 8055, 8056, Telekom Puls, 9020A, 8057, Vodafone Smart Tab 3G, 9005X, 8054, 8079, 8080, 8070, 9010X, 9015W, 8050D, 8050X, VF-1296, 9002W, 8050G, 8050E, 9003A, VFD 1100, 9003X, 8085, 9030G, VFD 1400, 8062, 8063, 9030Q, 5098O, 9015Q, 9025Q, 9015J, 9015B, 9015U, C15BA, IC01, 9203A, and 9024W.

35. Additionally, or in the alternative, upon information and belief, TCL has induced infringement of the '318 Patent in this judicial district, the State of Texas, and elsewhere in the United States, by intentionally inducing direct infringement of the '318 Patent, including by aiding or abetting the infringement of its end users and/or customers, by and through at least TCL's practicing, making, using, offering for sale, selling, without authority from Plaintiff, methods and devices implementing methods, including associated with computers and computer networks, comprising at least the above-described products. Upon information and belief, such aiding and abetting comprises providing hardware, software and/or instructions. Upon information and belief, such induced infringement has occurred since TCL became aware of the '318 Patent, which is at a minimum is in connection with the filing of this lawsuit.

36. Additionally, or in the alternative, upon information and belief, TCL contributed to infringement of the '318 patent in this judicial district, the State of Texas, and elsewhere in the United States, by actions comprising making, selling, and/or offering for sale at least the above-described products, which at a minimum are used in practicing the methods of the '318 patent. These products contribute to the direct infringement of the '318 patent by customers and/or other end users in this judicial district, the State of Texas, and elsewhere in the United States. Upon information and belief, these products are especially made or especially adapted for uses and practices which constitute infringement of the '318 patent. These products are not staple articles or commodities of commerce suitable for substantial non-infringing uses, including at least because they are especially made or especially adapted for uses and practices which constitute infringement of the '318 patent.

37. On information and belief, TCL's contributory infringement comprises its knowledge that the above-mentioned products are especially made or especially adapted for uses and/or practices which constitute infringement of the '318 patent and they are not staple articles or commodities of commerce suitable for substantial non-infringing uses. Such knowledge is evidenced by the fact that infringement of the '318 patent from the use of the products is clear, evident, and unmistakable to anyone aware of both the '318 patent and of the details of the uses and practices employed in connection with the products. It is similarly clear, evident, and unmistakable to anyone aware of both the '318 patent and of the details of the uses and practices employed in connection with the products that they are especially made or especially adapted for uses and/or practices which constitute infringement of the '318 patent and they do not comprise staple articles or commodities of commerce suitable for substantial non-infringing uses. TCL would necessarily be aware of the details of the methods used and practiced in connection with the products at the time it became

aware of the '318 patent, and at that point it would have necessarily become clear and unmistakable to TCL that at least its customers and end users were infringing the '318 patent, that the products are, at a minimum, contributing to such infringement, and that the products are especially made or especially adapted for uses and practices which constitute infringement of the '318 patent, and they are not staple articles or commodities of commerce suitable for substantial non-infringing uses.  Since TCL became aware of the '318 patent, it has necessarily possessed such knowledge.

38. On information and belief, Defendants have had at least constructive notice of the '318 Patent pursuant to the Patent Act.  Further, it is likely that Defendants became aware of the '318 patent well before the filing of this suit and perhaps at least months ago upon being informed of Cases 2:16-cv-01293 and 2:16-cv-01294, which MyMail filed in this District on November 23, 2016 against Huawei and ZTE, respectively, and/or Case 2:16-cv-01352, which MyMail filed in this District on December 2, 2016 against HiSense, for activities infringing the '318 patent comprising methods for obtaining a set of network access information with at least substantial similarities to Defendants' infringing activities.  Further, Defendants will at a minimum have actual notice of the '318 patent at least upon being notified of and/or formally served with a copy of this Complaint. At a minimum, this Complaint (and also MyMail's Complaints against Huawei, ZTE, and/or HiSense, to the extent Defendants have previously been aware of such) notifies Defendants that they have been infringing, and their activities have been accused of infringing, the '318 patent. MyMail's Complaint also recites facts which state a valid and plausible claim of infringement.  Defendants' infringement of the '318 patent is clear, unmistakeable, and inexcusable.  To the extent Defendants continue their infringing activities comprising obtaining a set of network access information in an infringing manner post-notice, such infringement is necessarily willful and deliberate.  Plaintiff believes and contends that Defendants' continuance of

their clear and inexcusable infringement of the '318 patent post notice and at a minimum post-suit suit is willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, and/or characteristic of a pirate.

39. On account of the foregoing, Plaintiff contends such activities by Defendants qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Thus, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284. Plaintiff reserves the right to take discovery regarding Defendants' first actual notice of the '318 Patent, including as related to whether Defendants' infringement is or was willful, and to the extent such notice preceded this suit being filed.

40. Each of Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

## DAMAGES

41. By way of their infringing activities, Defendants have caused and continue to cause Plaintiff to suffer damages, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

42. Defendants' infringement of Plaintiff's rights under the patent-in-suit will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

43. Plaintiff also requests that the Court make a finding that this is an exceptional case entitling Plaintiff to recover their attorneys' fees and costs pursuant to 35 U.S.C. § 285.

## JURY DEMAND

44. Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure on all issues so triable.

## PRAYER FOR RELIEF

45. Plaintiff respectfully requests that the Court find in their favor and against Defendants, and that the Court grant Plaintiff the following relief:

A. An adjudication that one or more claims of the patent-in-suit has been directly and/or indirectly infringed, either literally and/or under the doctrine of equivalents, by Defendants;

B. An award to Plaintiff of damages adequate to compensate Plaintiff for Defendants' past infringement, together with pre-judgment and post-judgment interest, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses, and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C. A grant of preliminary and permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants and all persons, including its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation therewith, from making, using, offering to sell, or selling in the United States or importing into the United States any methods, systems, or computer readable media that infringe any claim of the patent-in-suit, or contributing to or inducing the same by others from further acts of infringement with respect to the claims of the patent-in-suit;

D. That this Court declare that Defendants' infringement has been, and continues to be, willful, including that Defendants acted to infringe the patent-in-suit despite an objectively high likelihood that its actions constituted infringement of a valid patent and, accordingly, award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284;

E. That this Court declare this to be an exceptional case and award Plaintiff reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

F. A judgment and order requiring Defendants to pay Plaintiff their damages, costs, expenses, fees, and prejudgment and post-judgment interest for Defendants' infringement of the patent-in-suit as provided under 35 U.S.C. §§ 284 and/or 285; and

G. Any and all further relief for which Plaintiff may show itself justly entitled that this Court deems just and proper.

April 3, 2017

Respectfully submitted,

/s/ *John J. Edmonds*
John J. Edmonds – Lead Counsel
 jedmonds@ip-lit.com
 Texas Bar No. 789758
Stephen F. Schlather
 sschlather@ip-lit.com
 Texas Bar No. 24007993
Shea N. Palavan
 spalavan@ip-lit.com
 Texas Bar No. 24083616
Brandon G. Moore
 bmoore@ip-lit.com
 Texas Bar No. 24082372
Eric R. Carr
 ecarr@ip-lit.com
 Texas Bar No. 24091261
**COLLINS, EDMONDS,
SCHLATHER & TOWER, PLLC**
1616 South Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535

*Attorneys for Plaintiff,
MyMail, Ltd.*